27

23 - 20152



FILED
JUN 2 5 2025
CLERK'S OFFICE
DETROIT

## Notice of Intent to appeal

This notice is in regard to any decision resulting from the hearing on July 2, 2025. If the order results in the continued false claim defendant is unable to understand the proceedings or to consult with counsel. A notice of appeal filed prior to the order being issued is to be docketed, assigned a case number, and considered promptly filed on the same day the order issued. If the District Court does not continue its absurd claim that defendant has "concrete intellect so deficient as to render a trial impossible", then the appeal is to be considered withdrawn. Attached "Motion to stay the order from the District Court" and "Appellate Brief" are to be forwarded to the 6th Circuit Court of appeals with the Notice of Intent to Appeal. Defendant requests oral hearing and stresses this is an interlocutory appeal.



## "Motion to stay the order from the District Court"

"An order committing defendant for psychiatric evaluation is immediately appealable as a collateral order." see US. v. Davis, 93 F.3d 1286, 1289 (6th Cir. 1996). By the same logic, so is any order committing defendant to restoration procedure. An order to dismiss the case claiming defendant cannot be restored is considered a final order and it results in the loss of rights so defendant is injured in that event. This motion is written to pre-empt either instance, and request a stay on the order be imposed.

Defendant is not allowed to argue motions in the District Court as the Court considers Defendant to be represented by counsel, but this is in error as counsel is precluded from representing Defendant as he is not a member of the State Bar of Michigan. See ED. Mich. L.R. 83.20 (f). For this reason, filing this motion at the District Court is not possible as it will just be stricken from the record.

Jack Crispahday ⊗

## Appellate Brief

pg. 1

The District Court misses a subtle distinction in 18 U.S.C. 4241 in that a

HEARING is required if the record creates a bona fide reasonable doubt that

defendant lacks a present ability to understand the proceedings or to assist

counsel with a reasonable degree of rational understanding. If, and only if, a

hearing is required, the District Court may order an evaluation to aid the Court

in determining competency at the hearing. A competency evaluation is never "required"

as the District Court claimed in the order sending Defendant to the literal farthest

facility possible, in violation of 18 U.S.C. 4241.

A hearing is required when a bona fide doubt of competency exists, which it is clear did not exist as the District Court stated in the order to send Defendant for a discretionary psychological evaluation that "Defendant may well be competent." If Defendant "may well be competent", then there is not a bona fide doubt of competency, so a hearing is not allowed nor is a discretionary evaluation. No evidence existed on the record that defendant was unable to understand the proceedings or assist counsel in his defense.

Technically, June 6th, 2023 was a competency hearing under 18 U.S.C. 4241 et all. At that time no evidence of incompetency existed. This is proved by the government's motion to request a competency evaluation (as opposed to a hearing as the law allows if a bona fide doubt of incompetency exists) as the government requested that Defendant be sent to a government psychologist "to establish 'a reasonable belief'" of incompetence. To put this in the proper light, the government requested that Defendant be sent to a government psychologist to manufacture the evidence

necessary to have a hearing regarding Defendant's competency. The government wanted to have Defendant evaluated to create the evidence necessary to hold a hearing when the law states that a hearing must be held ONLY if a bone fide doubt of competency exists already. If a hearing must be held, a discretionary evaluation is allowed prior to the hearing to aid the Court in its determination. To make clear the error:

1. The government requested a competency evaluation, not a hearing
2. The evaluation was requested to manufacture the evidence necessary for a hearing
3. An evaluation can only be ordered if evidence exists to support a hearing, which a bone fide doubt did not exist.
4. A hearing was held on June 6th, 2023 absent a bone fide doubt
5. The Court ordered an evaluation AFTER the hearing while stating that "Defendant may well be competent" and that a "discretionary evaluation" was somehow "required"

Defendant appealed the order for competency evaluation, see appeal 23-1661, as an interlocutory appeal under U.S. v Davis, 93 F. 3d 1286, 1289 (6th Cir 1996). Defendant refused to participate in the evaluation stating a 5th Amendment right not to aid the government in an investigation to deny him a trial and that an interlocutory

appeal regarding the order for evaluation existed. Defendant was held at the facility for

longer than the allotted 30 days for evaluation. The evaluation was ended on the

exact same day as the brief for appeal 23-1661 was due, September 25th, 2023.

This was clearly so the government could argue the appeal was moot as the

evaluation was over and no relief could be granted. This logic is in error as the

speedy trial clock is still stopped as a result of the faulty order from the Court, and

Defendant is entitled to have the days retolled as trial was delayed absent the

statutory exception used by the Court to pause the clock. If the evaluation was ordered

in error, Defendant is entitled to have that time count against the government, so

relief is available.

18 U.S.C §4241-4247 requires representation by Counsel during a hearing when a

Bona Fide doubt of competency exists. In addition to the previously listed issues, 28 U.S.C.

§1654 precludes assigned Counsel from representing Defendant. 28 U.S.C. §1654

only allows for Counsel as per the rules of the Court. E.D. Mich. L.R. 83.20(a)·(j)

require Counsel to be a member of the State bar of Michigan, which Counsel

J.P. Nogues III is not a member. E.D. Mich L.R. 83.20(f) applies, and designates

Mr. Nogues as "non-local counsel" which requires Mr. Nogues to designate a

"local Counsel" to attend all hearings. As no "local counsel (read as a member of

the State bar of Michigan) with an office in the District" appears on record, no

Counsel appears on record as per the rules of the Court under 28 U.S.C. § 1654.

As a result, all proceedings related to 18 U.S.C. § 4241 are null and void, and all

motions filed pro se, dismissed under 28 U.S.C. § 1654 as "hybrid representation"

must be reinstated and determined on their merits. Also note that E.D. Mich.

L.R. 83.20(j) is of no actual legal effect to anyone whom is not a member of

the State Bar of Michigan. Jurisdiction over members of the State Bar of Michigan

by the Michigan Attorney Grievance Committee is established by the Michigan Legislature,

and is not extended to Attorneys whom are not members of the State Bar of

Michigan via Federal Court rules. Defendant reported Mr. Nogues to the Michigan

Attorney Grievance Committee for explaining in ECF 57 pg. 301-302 that he had

a "conflict of interest" that "precludes representation in appeal 23-1661", then labored in

the appeal by delaying it for over 2 years. The Grievance Committee sent a letter

explaining they have no jurisdiction to investigate Mr. Nogues.

Important to note, Mr. Nogues states in E.C.F. 57 pg Id 301-302 that appeal 23-1661

is "non-frivolous", then in appeal 23-1661 Document 41 and 42 argues that "there

are no non-frivolous arguments" and that the appeals court lacks jurisdiction

over an order sending defendant for a competency evaluation because it is not a

final order. He also seems to not understand that an Anders Brief purpose is to

advocate Defendants arguments as best as he can while asking to be removed

as Counsel because he is supposed to be Defendant's advocate, not Amicus Curae.

Instead he uses it to argue the appeal should be dismissed and Defendant's argument

is frivolous. As part of the argument in 23-1661 is that Mr. Nogues is ineffective

as Counsel, Mr. Nogues has a vested personal interest in both the delay and

dismissal of appeal 23-1661.

Mr. Nogues has <u>REPEATEDLY</u> attempted to disparage an argument under the common law and Law of Nations by creating a false equivalency to an entirely unrelated argument.

Sovereign Citizens arguments are an "as applied subject matter jurisdiction" challenge. The underlying basis for the argument is that citizens a party to the U.S. Constitution under Article 4 ~~Cons~~ Section 2 Clause 1 are "the People" in which U.S. Sovereignty resides (See Chisholm v. Georgia (2 Dall) 419, 416, 1 L.Ed. 440 (1793)). That the "privileges and immunities" of this type of citizen (Citizens in the Several States, ie. a citizen of the Republic of Ohio) are distinct from the "privileges and immunities" of 14th Amendment "US citizens" whom are "persons", not "People", and "subject to the jurisdiction" of the United States. Since 1 U.S.C. §1 defines "person" as either a human being or a corporation, and they are not "persons" because they are "the People", they believe the U.S. Government has improperly designated them as

corporations, and that is how the U.S. Government is obtaining jurisdiction through the power to regulate commerce. Since they are "flesh and blood human being" and "the People" whom are the "Sovereign Citizens" of the United States, and are being designated as corporations (hence their name in all capital letters, a sign of subjection to a master under Roman Law), there are a multitude of schemes to "reclaim ownership of their strawman corporation" and "assert their Sovereign Authority" over the Federal Government, since they are "the People" whom the Sovereignty of the King of England "devolved" onto at the revolution.

  Some of the "Sovereign Citizens" argument has merit, such as Article 4 Section 2 Clause 1 citizens are distinct from 14th Amendment citizens as the 14th Amendment created a new citizenship without altering existing citizenship. This distinction was discussed in the Slaughterhouse U.S. Supreme Court cases (overturned on other aspects of law), and distinguished as "de facto" citizens and "de jure" citizens, citizens by fact and citizens by law. Other aspects are utterly ridiculous, such as you are not being

Pg. 9

sued as a corporation under the UCC and serving the punishment of a commercial regulation because you give the court jurisdiction by being tricked into claiming to be a corporate person with the same name as your human name. But these claims are due to people taking advantage of people's legal ignorance and defrauding them by selling schemes to "reclaim your strawman". It is made worse by Congress and the DOJ attempting to manufacture a false Police Power within the States by slapping the words "in or affecting interstate or foreign commerce" on a criminal statute, and the Courts refusing to do their jobs, and put an end to this fiat.

The above argument, however, is **unrelated** in every way to the argument that under the common law and Law of nations adopted at the founding that a nation is brought into existence by declaring itself to exist (See U.S. Declaration of Independence), this is called "the right to Self-Determination". That under International Law, from existence flow the rights to Equity, Independence, Dignity and Property. Once a nation

exists, and through it's internal acts invests it's Sovereignty into the person of an

Individual, that the Sovereign is entitled to Immunity from foreign courts under the

theory of exterritoriality explained in US Supreme Court case "the Schooner Exchange

v. McFaddon, 7 Cranch, 117 (1818)" and others. That this immunity is owed to the

Sovereign of a "Wandering Nation", a "defacto State", or a "recognized State" under

the Law of Nations, regardless of whether or not the nation or state is on

friendly terms with the U.S. That unless jurisdiction is found in 28 U.S.C. § 1604-6,

that jurisdiction over the person of a foreign Sovereign does not exist as a matter

of Law, and the attempt by the Court to exercise jurisdiction amounts to a

"Judicial Declaration of War", a power belonging to Congress. The authorities for this

argument follow, but suffice to say that the only similarity between this argument

and a Sovereign Citizen argument is that the word Sovereign appears in both.

All Sovereign power is invested by law in a Single person, the King or Queen. The
King is Sovereign and Independent and owes no kind of subjection to any other
potentiate on earth. See 1 W. Blackstone Commentaries * 183; see also Chisholm v.
Georgia (2 Dall) 419, 446, 1 L. Ed. 440 (1793)

Sovereign Immunity also emanates from the conceit of the perfect equality and ~~perfect~~ the absolute independence of Sovereigns under International Law. See Hyatt III, 587 U.S. at 139 S. Ct. at 493

Defendant as a de facto state is immune from suit. see Schooner Exchange v. McFaddon, 7 Cranch, 117; Osborn v. Bank of U.S. 9 Wheat. 870; Beers v. State of Arkansas, 20 How. U.S. 527; King of Roumania v. Guaranty Trust Co., 250 F. 341; Porto Rico v. Rosaly, 227 U.S. 270; Kawananakowa v. PolyBank, 205 U.S. 349; Matter of Hoeple, 179 N.Y. 308; Manning v. State of Nicaragua, 14 How. Pr. 517; Leavitt v. Dabney, 37 How. Pr. 264; Hassard v. United States of Mexico, 29 Misc 511

The court may take judicial notice of the fact that defendant is a government with which the United States is not on friendly terms and which it has not recognized. see U.S. v Palmer, 3 Wheat. 610; The Divina Pastora, 4 Wheat. 52; The Nueva Anna, 6 Wheat. 193; Oetjan v. Central Leather Co., 246 U.S. 297; Emperor of Austria v. Day, 3 De G., F. & J. 217; Republic of Peru v Peruvian Guano Co. 36 Ch. Div. 489; Republic of Peru v. Dreyfus, 38 Ch. Div. 348; Taylor v. Barclay, 2 Sim. 213; Rose v. Himley, 4 Cranch, 241; Jones v. U.S. 137 U.S. 202

Recognition does not create the State although it may be desirable... Also in the country granting the recognition, that act is conclusive as to the existence of the government recognized (see Taylor v. Barclay, 2 Sim. 213; Republic of Peru v. Dreyfus Bros & Co., L.R. 38 Ch. Div. 348; Republic of Peru v. Peruvian Guano Co., L.R. 36 Ch. Div. 489) The existence of such a government whenever it becomes material may be proved in other ways. (see Yrisarri v. Clement, 3 Bing. 432; The Charkich, L.R. 4 A & E 59) A de facto government is susceptible of no limitation not imposed by itself. This is a result of its independence. Courts may not bring a foreign sovereign before their ~~bar~~, not because of comity, but because he has not submitted himself to

our laws. Without his consent, he is not subject to them. Concededly that is so to a foreign government that has received recognition. (see Schooner Exchange v. McFaddon, 7 Cranch, 116; Porto Rico v. Rosaly, 227 U.S. 270; Oetjen v. Central Leather Co. v. United Fruit Co., 213 U.S. 347; Ricaud v. American Metal Co., 246 U.S. 304; Hassard v. United States of Mexico, 29 Misc. 511; Mason v. Intercolonial Railway, 197 Mass. 349; Wadsworth v. Queen of Spain, 17 Q.B. 171; Vavasseur v Krupp, L.R. 9 Ch. Div. 351; Strousberg v. Costa Rica, 44 L.T. 199) But whether recognized or not the evil of such an attempt would be the same. In either case, to do so would "vex the peace of nations". Whenever an act done by a Sovereign is questioned, it becomes a matter of negotiations or of reprisals or of war. (see Wulfsohn v. Russian Socialist Federated Soviet Republic, 234 N.Y. 372 (N.Y. 1923)

Defendant's claim of Sovereign Immunity is an item of first impression on two points of law:

1. A declaration of Sovereignty (AKA Independence) is valid whether it is self-declared by 56 individuals (See US Declaration of Independence) or a single person (See Book of Moses "Genesis": Abraham (ab-hamon goyim, "father of a multitude of Nations"); Jacob; and others). No other Nation can declare this act invalid as the existence of a Nation is not dependent upon the permission of any other nation or set of nations.

2. Whether a Nation is a "Wandering Nation", has acquired property to become a "de facto State" or is a fully recognized state, the person invested with the Sovereignty of the Nation is immune from foreign courts as a matter of Law. Otherwise it is not Independent.

In addition, Defendant contends that he contacted the U.S. State Department via phone in November/December 2022 and explained that he had self-declared a new nation and under the Law of War had seized territory formerly belonging to the State of Michigan, and wished to discuss a method to obtain non-immigrant visas for citizens wishing to cross the borders of the new State into U.S. territory. The U.S. State Department agreed that Defendant was within the Law of Nations and the Law of War, and negotiated a method to obtain non-immigrant visas, including how to conduct the "in-person interview" without a U.S. Consulate within the new State. This is irrevocable implicit recognition, and binding on U.S. Courts. Mr. Nogues tried to disparage this fact at one of the hearings by claiming "he probably spoke to a low level State Department employee", because he is aware this conversation with the agency of the Executive tasked with interacting with foreign governments took place. Defendant's phone bills and emails to the Joint chiefs of Staff, DOJ, the US Senate and House of Representatives, Director of National Intelligence, etc.

confirm this event took place, and that it was interpreted as recognition. Also that

as Sovereign of the new state, Defendant would "freely cross the borders" as a

friendly Sovereign under the concept of exterritoriality. On January 5th, 2023 (on or about)

Defendant sent a picture of his car and license plate with expired tags to the FBI, DOJ,

Joint chief of staff, Office of Director of National Intelligence, and others explaining that

he would be travelling around the country of the US with expired tags, hoping to

be pulled over and taken to Court because "we all know you want my argument

nowhere near a court." For one month and 13 days, defendant drove from Michigan,

Ohio, Kentucky, Tennessee, out west to New Mexico then Texas, watching Sheriffs and

State Police pull behind his car, run his plates, then leave the Highway. In New

Mexico he had the Sheriff department pull his car out of a ditch, run his plates,

then was given instructions on "the fastest way out of the County."

In December of 2022, defendant posted on Twitter (now X), "I know the plan

is to try to paint me as insane. I could have left everything about Tarot off of here,

but I want you to concentrate on that while I concentrate on COVID facts in Court."

Three months later the DOJ claims: they were unaware of Defendant until

February 17th, 2023; that defendant is incompetent because he believes in Tarot;

believing the U.S. Government released SARS-COV-2 through the company Eco-Health

Alliance to launder money to Israel through Pfizer is a delusion; and that the

Law of Nations and Law of War confirmed by the U.S. State Department is a

delusion as well. Since it is the Law, the strategy is to discredit while trying

to avoid the argument from being heard on its merits, exactly a defendant

explains in his first pro se motion as well as online three months before his

arrest. ("No Kings Day" and "Operation Rising Lion," cute, guys.)

  Despite the government psychologist never evaluating Defendant for a "present

ability to understand the proceedings or consult with Counsel with a reasonable

degree of rational understanding", as he was tasked with "Establish[ing] a

reasonable belief" of incompetence, Dr. Nybo claimed to diagnose defendant

with "delusional disorder, Persecutory Type" and as a result he cannot understand

the proceedings and cannot assist in his defense. As evidence of his conclusion,

he claimed that: appeal 23-1661 was a delusion; defendant arguing that he

self-declared a government using the Law of Nations was a delusion; religious

utterances on Twitter were a delusion; claiming that computer forensics would confirm

he was targetted online were a delusion. It is important to note that defendant

is a computer expert trained by Law Enforcement in Computer forensics, was top

of his class, and has a degree in Computer Science. Defendant can fill two of these

pages with his Credentials as an expert in Computer Networking and an expert in

both Windows and Linux Operating Systems, working for the University of

Michigan for 5 years in their highest tier of Information Technology. Defendant has

more credentials in his field of expertise than Dr. Nybo has in his.

A delusion is defined as a fixed, false belief, not amenable to change with

the introduction of new information. Federal Rules of Evidence 104(b) explains that

when an expert gives an opinion that evidence must be presented to support the opinion. A forensic psychologist cannot claim something is a delusion unless evidence is given to prove the belief is both false, and when presented contradicting evidence that cognitive dissonance prevents the ability to alter the belief based upon new information. In addition, courts are not allowed to assume anything at all. The Court claimed that it can assume something is a delusion without a showing it is false nor showing it is not amenable to change, as long as the Court feels the belief is absurd. That proving it is a delusion is necessary because otherwise a defendant can just refuse to participate in a discretionary examination to prevent proof it is a delusion. The elephant in the room is that Courts and forensic psychologists have been getting around the Dusky Standard for competency by claiming that anything they don't believe is a delusion, and the presence of a delusion equates to incompetence, so there is no need to determine if a person understands the process or can consult with counsel. In fact, Dr. Nybo testified

that people with this disorder "seem rational" unless they are conversing on the topic of their delusion. As an example, Defendant would seem rational, until they talked about appeal 23-1661 that Dr. Nybo claimed was a delusion, but isn't. Or Defendant would seem rational until he discussed Eco-Health Alliance requesting funding from DARPA to "release a human engineered Coronavirus into the bat population of China" a month before the Pandemic, even though when Defendant made this claim in U.S. Supreme Court case 23-7731 on May 29th, 2024 the White House revoked all Federal Funding for Eco-Health Alliance immediately after and on June 3rd, 2024 the House Intelligence Committee discussed Eco-Health Alliance as the origin of SARS-CoV-2. Defendant requested Mr. Nogues hire a computer forensics expert to verify that claim as well, Mr. Nogues said it was not his job to prove Defendant is sane, it is the government's job to prove he is not. The Court claimed whatever it doesn't believe is a delusion, and delusions mean incompetence.

Delusional disorder is not mean an inability to understand the proceedings

or to consult with counsel with a reasonable degree of ~~um~~ rational understanding.

Also, a delusion must be proven to be false and not amenable to change when

shown evidence that contradicts the belief. But it must also be proven that

the delusions prevent the ability to understand the ~~proceedure~~ proceedings or to

consult with counsel. To put it simply, it must be proven that there is an inability

to understand the proceedings or an inability to consult with counsel, then proven

that inability is the result of a mental illness. Not simply to diagnose a person

with delusional disorder because you don't believe what they do based on your

gut feelings and so they are ipso facto incompetent. This is just a way around

Dusky, and it is ridiculous.

Defendant's Sovereign Immunity argument was screened under 28 U.S.C. §

1915 (e)(2)(B) and Federal Rules of Habeas Corpus Procedure (1) and (4) in US.

Supreme Court Case 23-7731. Therefore it is non-frivolous, potentially meritorious

and relief requested was in the Courts discretion to grant. The case was dismissed

under U.S. Supreme Court Rule 20.4(b) as not a decision on the merits, and argument preserved for lower courts. So don't take Dr. Nybo's word that the legal argument is a delusion, I believe Defendant has a greater grasp on what a delusion is than the supposed expert.

Mr. Nogues, to his credit, argued that Defendant is competent. He stated:

- I am confident in his ability to proceed pro se
- Defendant is predicting what the US Attorney will argue, and rebutting those arguments before the US Attorney makes them, "clearly he is competent"
- We disagree on the Law, but those disagreements are rational
- The argument he cannot be counsel due to E.D. Mich. L.R. 83.20(f) is "clever", "novel", and as far as anyone can tell has never been argued before (see appeal 23-1616 document 41)

The District Court noted Defendant and Mr. Nogues discussed strategy and how to cross-examine Dr. Nybo. Defendant has filed multiple appeals, 2 petitions for Writ of Mandamus, and a petition for Writ of Habeas Corpus, several pro se motions, and has been docketed at the U.S. Supreme Court twice. Defendant is clearly competent. On May 10th, 2024 Defendant was deemed incompetent as he was

supposedly unable to assist in his defense despite Mr. Nogues arguing he was

not only capable of assisting, but capable to proceed absent counsel. Defendant

was then sent to M.C.F.P. Springfield for "restoration procedure". On November

17th, 2024 defendant had spent ~18 months in low security General Population.

On November 18th, 2024 absent cause, defendant was placed in solitary

confinement in M.C.F.P. Springfield for 105 days where other than once a

week for less than a minute a psychologist came by to ask, "Do you want to

harm yourself or others?" and "Would you like medication?" Defendant was

otherwise ignored. The assigned psychologist, Dr. Turner, was off for 4 weeks

during this period (2 weeks vacation, 1 week sick, 1 week training). She

kept apologizing to Defendant that she was too busy to meet with him. At

65 days defendant was pulled out, and placed in a cage to be asked

questions like "What types of pleas are there?" Then he was moved to a

different solitary confinement pod with the ability to see a T.V. and he no

longer had to be handcuffed to take a shower, and every other day he was allowed out of his cell for 3 hrs instead of 1 hr.

   After 105 days he was moved to general population, told he was "not restored to competency", and the facility was holding a hearing to force medicate. He was told that since he was not a danger to himself or others, he would not be forced medicated, but this was a formality leading to a sell's hearing to request a judge order forced medication. Upon questioning the case manager Mrs. Paages Defendant was informed that the reason he was in solitary confinement was that he was not taking voluntary medication. That no one is allowed out of solitary unless they agree to medicate.

   Upon questioning the other inmates at the facility Defendant was told that the facility will never restore anyone to competency unless they are medicated, and that solitary is used to torture people into taking it, and if you refuse, then they move to force medicate you. That if I ever want

out of that facility I have to "play the game". At least two guards at the facility, one named "Lane", said the same thing. Dr. Rice told Defendant he wanted him to take medication because it would make Defendant choose to stop fighting his case and plead guilty. In reading cases for sell's hearings for Dr's from that facility, they brag that most people once forced to medicate plead guilty soon after being "restored". That facility clearly needs to be investigated, and you should start with Dr. Rice.

Defendant has been incarcerated for ~28 months without a trial due to procedural and substantive violations of due process by abuse of the competency procedure. He has been in 13 facilities in 5 states, and each transfer means he has to purchase new property as he is continually moved from a State facility to a federal facility. Inmates have nicknamed this purposeful torture to elicit a plea, "Diesel Therapy" as it is a common tactic to mistreat people who try to fight their cases or are being politically persecuted pretending

it is a prosecution. During both the evaluation and the "restoration procedure",

Defendant was in the facility for longer than the statute allows for. This is

purposeful mistreatment. Every single thing the District Court claimed was

evidence of incompetence there is a 6th Circuit opinion explaining how it is

not evidence of incompetence. When Defendant states 3 months before his arrest

that the government will do exactly what it has been doing for ~28 months

now, and they will do it to discredit what Defendant can prove, then it

is clear a conspiracy to deprive him of his rights under color of law is occurring.

It is not a coincidence. Incompetent people do not make "clever", "novel", and as far

as anyone can tell, never argued arguments and get docketed at the U.S. Supreme

Court pro se twice. To claim otherwise is absurd. Defendant is running out of paper

and ink, and has no money to buy more. Please view case 23-1661 defendant's

response to Mr. Nogues Anders brief, likely document 43 for case law regarding

competency where the District Court ignored Stare Decisis. Pro se arguments

are to be liberally construed with the intent to do justice and it is the Court's
duty to find the law and apply it to the case. I understand that normally
Defendant cannot reference another Document in another case for an
argument, but as an indigent with limited supplies, Defendant has no other
option, and should be accommodated in this instance. Defendant requests
any relief available by law. Thank you.

      -INRI

I certify this is 25 pages in length

Jack Carpenter #465173570
Livingston County Jail
150 S. Highlander Way,
Howell, MI 48843

U.S. MARSHAL

RECEIVED
JUN 25 2025
CLERKS OFFICE
DETROIT

Clerk of the Court of
Mark A. Goldsmith
231 W. Lafayette blvd. 5th floor
Detroit, MI 48226

FIRST CLASS
US POSTAGE