United States District Court
Eastern District of Michigan
Southern Division

33

United States

Case No: 23-20152

Mark A. Goldsmith

F I L E D

JUL 1 1 2025

CLERK'S OFFICE
DETROIT

Jack Carpenter

Motion to dismiss for violation of due process, punishment absent due
process, violation of 6th Amendment right to counsel

Hearing requested

18 U.S.C § 4241 only grants district court authority to hold a hearing for

competency if there exists a reasonable belief of incompetence. The US Attorney requested

competency evaluation, not a hearing, and the purpose of the evaluation was for

the government "to establish 'a reasonable belief'" meaning the government requested

the evaluation to manufacture evidence to support a hearing. The Court improperly

claimed a discretionary evaluation was somehow "required" claiming that defendant

"fringe beliefs" were in some unexplained way evidence that defendant lacked either

present ability to understand the proceedings or the present ability to assist in their

defense. Assigned Counsel argued defendant understood the proceedings and was able

to assist in his defense. The Court stated in the order granting a request for an

evaluation that "defendant may well be competent" admitting that no "reasonable belief"

of incompetence existed. First Amendment protected beliefs, no matter how irrational a

District Court "feels" they may be, are not evidence a person does not understand

the proceedings or lacks the ability to make the few decisions to exercise rights

associated with the term of art "assist in his defense." The bar to meet competence is low.

An insane person can be both competent to stand trial, but not guilty due to insanity.

The Dusky Standard for competency sets the standard for competency as the present ability

to understand the proceedings and the present ability to consult with counsel. A person

can have a mental illness so severe that they lack comprehension of right and wrong,

yet still meet the low bar for competency. Incompetence is a concrete intellect so deficient

as to render a trial impossible. A person is not incompetent because they believe things

the Court assumes to "be fantastic". A person is not incompetent because they believe

"fringe" things the Court views as irrational. A person is not incompetent because the

Court feels what they believe is false. A person is not incompetent because the Court

feels that no amount of evidence will convince a person their beliefs are false. A person is not incompetent because they disagree with counsel or refuse to work with them. A person is not incompetent because they insist on a defense with no legal merit. A person is not incompetent because of their religious beliefs. A person is incompetent if they cannot understand or comprehend the court proceedings or they lack the ability to comprehend or communicate with their lawyer. A person can be competent but also not intelligent enough to fully grasp everything counsel explains, and it has to be explained multiple times.

When a person files a Petition for a Writ of Habeas Corpus at the U.S. Supreme Court, and it survives 28 U.S.C. § 1915(e)(2)(B) scrutiny as well as the Federal Rules for Habeas Corpus Procedure scrutiny in addition to complies with all filing rules, a person clearly meets the low bar of competency.

When a person files an argument to have their counsel removed because the court rules prohibit counsel from being assigned counsel, and even counsel has to admit

the argument is "Clever, Novel, and as far as anyone is aware has never been argued

before" (See 6th Cir Appeal 23-1661 document 41) then a person clearly meets the

low bar of competency.

The District Court abused its discretion in ordering an evaluation under 18 U.S.C. §

4241(b) "to establish 'a reasonable belief'" of incompetence when no evidence existed

to even suggest, let alone establish a reasonable belief of incompetence. The Court claiming

that "Fringe beliefs" are "behaviors" that establish a reasonable belief of incompetence, and

therefore "require" a psychological evaluation is ridiculous on two fronts. First, 18 USC §4241(b)

clearly establishes that an evaluation is discretionary, but can only occur if the evidence

already available on its own creates a reasonable belief of incompetence. This means that

the evidence must allow one to reasonably suspect that a person does not comprehend

the proceedings or cannot assist in their defense. A person having beliefs that the Court

feels are irrational or indicate a mental illness does not equate to a reasonable belief

that a person has a breakdown in cognitive function so severe that they do not

understand the role of a judge or U.S. Attorney or that they lack an ability to assist counsel in formulating a defense. When defense counsel states that defendant is predicting the AUSA's arguments, and rebutting them before they make them, and then the AUSA makes the exact arguments that defendant predicts, it cannot be said it is "reasonable" to assume defendant cannot understand the proceedings. When defense counsel argues that defendant can and has been assisting in his defense, and that counsel is confident in his ability to proceed pro se, it cannot be said it is "reasonable" to assume defendant cannot assist in his defense.

Second, beliefs are not "behaviors" nor are beliefs the court feels are irrational the criteria for incompetence. A person has the right to believe and express the belief of anything they want, free from the interference of others. A person cannot have a right to hold and express unpopular beliefs or beliefs that others find irrational while a Court can claim that "fantastic" beliefs are evidence of incompetence, and allow for the denial of a right to trial. Incompetence is such a specific thing and

such a high bar to prove as the result is the denial of the right to a trial that

to claim that "irrational beliefs" or "fantastic beliefs" or "delusional beliefs" ~~equate~~

allow the court to conclude that a defendant cannot assist in their defense

while counsel argues they can, and are, is to deny the first amendment, the

right to due process, and the right to a trial. To deny the right to trial on

merely 51% evidence because the Court views defendant's beliefs as "fantastic"

can have no effect but to chill the first amendment. One must be careful

what they say or express, if a Court declares it "fantastic", then you don't

process information "rationally", then you can't "assist in your defense."

   At the time when the government ordered a competency evaluation "to establish 'a

reasonable belief'" of incompetence no evidence existed to allow a person to claim

a reasonable belief of incompetence. As the Court stated he may well be

competent, it was thus clear that the Court did not have a reasonable belief

that defendant met the high bar of incompetency. If the criteria did not

exist to hold a competency hearing without an evaluation, an evaluation cannot be ordered to manufacture the evidence needed for a hearing.

A discretionary competency hearing under 18 U.S.C. §4241(b) requires that defendant be sent to the closest facility possible, and only for a period of 30 days. The director of the facility can request a 15 day extension. Defendant was sent to the farthest facility possible, and for a period that well exceeded 30 days. No 15 day extension was requested. When Defendant returned from the delay "not to exceed 30 days" which exceeded 30 days, defendant had to wait an additional ~3 months for the resultant hearing, then another 5 months for a second hearing to elaborate arguments, and then a ruling.

To elaborate this part of the claim, the AUSA requested a competency evaluation to manufacture evidence of incompetence in March 2023. To get an order on the hearing resulting from an evaluation period "not to exceed 30 days", it took ~14 months for the Court to rule on the motion. Defendant's max recommended

sentence was 0-6 months. It took the Court over a year to determine it would violate defendant's due process rights to give him a trial. By this time he already served over double his max recommended sentence. This is punishment absent due process to wait double your possible sentence for an order from the Court on the first motion. This is not a reasonable delay. This is what inmates have nicknamed "diesal therapy" where the Courts delay your proceedings past "time served" while moving you from facility to facility forcing you to rebuy hygiene and other property at each facility, often "losing" your legal paperwork as a method to elicit a guilty plea. Defendant has been in over 13 facilities in 5 states, had his legal work "lost" twice, has served 5 times his max sentence, and is being denied a trial. This is not an accident nor happenstance. It is a tactic to elicit submission.

   The Court eventually ruled that defendant was able to understand the proceedings, but in violation of 6th Circuit precedence ruled that he was

unable to assist counsel in his defense. Defendant had refused to participate in the psychological evaluation citing his 5th Amendment right not to aid the government in a sham investigation to deny him a trial. Also defendant filed a pro se appeal, case 23-1661, an interlocutory appeal challenging the Court's order sending him for an evaluation "to establish 'a reasonable belief'" of incompetence. Defense Counsel sent defendant a letter regarding this appeal (See ECF 57 pg 301-302) where defense counsel states the appeal is "non-frivolous", and that if he wins it proves he is competent. Also that he disagreed with the government claiming he was incompetent. Additionally, he points out that he can't represent him in the appeal due to a conflict of interest. Defendant points out that the fact that defense counsel was able to comprehend defendant's pro se appeal, that clearly defendant can "form a defense" and forming a "winning defense" is not the criteria for competence. Otherwise anyone who defends themselves but loses in court is per se incompetent. It suffices that, like this

argument, that the Court is able to comprehend defendant, and that he is able to

articulate facts to support his argument. As the ~~Supreme Court~~ 6th Circuit has pointed

out numerous times, this is still true even if the argument has no legal basis at

all and Courts have ruled the argument meritless numerous times. It is not required

to have extensive legal knowledge to be competent. However, having extensive legal

knowledge is evidence of competence as it cannot be said that you have extensive

legal knowledge but don't understand the proceedings. Nor can it be said that a

person with extensive legal knowledge cannot participate or assist in their defense.

  When defense counsel has to inform the appellate court that defendant has

argued the Court rules prohibit defense counsel from being assigned counsel on

the case, and that defendant's interpretation of the Court rules are "Clever, Novel,

and as far as anyone is aware has never been argued before." (See 6th Cir Appeal

23-1661 document 41) it is clear defendant is well above the low bar of competency.

Incompetent people are unable to form a defense, they cannot form "Clever" nor

"Novel" legal arguments regarding the legal intent and purpose of court rules that lawyers and Judges never contemplated. To even imply otherwise is absurd.

As defendant did not participate in the evaluation by properly exercising his 5th amendment rights as well as citing his "non-frivolous" appeal, to quote defense counsel, both being clear evidence defendant meets the "low bar" of competency, the psychologist Dr. Nybo was unable to evaluate defendant. Instead he reviewed 6 month old Twitter (now X) posts and supposedly diagnosed defendant with "delusional disorder" claiming things are delusions such as "a belief he has an appeal in the 6th Circuit". He also claimed defendant has been incarcerated for 4 years when it was 6 months, contained misrepresentations of defendant's religious beliefs and an absurd claim that defendant believed Pfizer was a nation-state. Dr. Nybo concluded that because of defendant's supposed delusional disorder diagnosed from misrepresenting what he believes defendant thinks, that defendant lacked a present ability to understand the proceedings and lacked the ability to assist in his defense.

Dr. Nybo also asserted that defendant's legal arguments that Defense Counsel and the 6th Circuit clearly understood and Mr. Nogues claimed were "non-Frivolous" arguments were, in Dr. Nybo's words ~~xxxxxx~~ "unintelligible legal jargon."

Saying a person has a mental illness and therefore is not competent while never assessing a person for the present ability to understand the proceedings or to assist in your defense is exactly what the US Supreme Court sought to prevent in creating the Dusky Standard for competency. Defendant sent a letter to defense counsel to the Court citing standard practices for defense counsel when the government moves to challenge competency. As they explain, counsel should request that the psychologist be restricted from access to anything in the proceedings, prior to arrest, employment history, medical records or anything unrelated to a "PRESENT ABILITY" to understand the proceedings or to assist in their defense. In other words, force the psychologist to determine first if the person meets the criteria for competence, and if not, then determine if

the reason they lack these abilities is due to mental illness. This is to prevent

the psychologist from doing what Dr. Nybo did, which is to manufacture a diagnoses

without ever assessing for competency, and using that diagnoses as all the proof

necessary to claim a person is incompetent. A clearly flawed report which

claimed appeal 23-1661 was a delusion, which never assessed for actual

competency, using 6 month old Twitter posts as a basis to form their opinion

was given more weight regarding the ability to assist in one's defense than defense

counsel's own assessment working with defendant to formulate his defense. The

Court clearly abused its discretion. Since the government requested the evaluation,

and did so to manufacture the evidence necessary to support a hearing, defendant

should have been sent to a neutral psychologist, and the psychologist be restricted

from having access to things unrelated to a "present ability" to understand the

proceedings or assist in ones defense. Truly, defendant never should have been sent

at all. However, the Court found defendant not competent to stand trial, and

designated defendant to the custody of the Attorney General for "a reasonable amount of time not to exceed four months (120 days)".

Defendant waited an unreasonable amount of time, ~6 months. The reason that defendant had to wait this long is because the facility keeps all detainees for longer than the statute allows. To the Attorney General "a reasonable amount of time not to exceed 120 days" means "all detainees are evaluated for 120 days, and then kept until whenever we get around to making a report." The statute limits the amount of time that the Court can place a detainee in the custody of the Attorney General, and at the end of 120 days (unless the Court extends the time for "an additional reasonable amount of time") the Court lacks the authority to hold defendant under 18 U.S.C. § 4241 (See U.S. v. Baker, 807 F.2d 1315 (6th Cir 1986)). So defendant had to wait an unreasonable amount of time because the Courts and Attorney General are flippant about explicit time grants on the amount of time a statute sets in stone.

Once defendant was finally sent to M.C.F.P. Springfield, defendant was placed in solitary confinement absent notice or a chance to defend. By this time defendant had spent 18 months in low security, general population, without disciplinary issues. Defendant was told that everyone is placed in Solitary Confinement for "observation", and that no one was allowed out of Solitary Confinement unless they agree to take "voluntary medication". Defendant spent 105 days in solitary confinement absent cause, notice or a chance to defend. He spent 65 days in "F" pod where he was locked down for 24 hrs a day on weekends, 23 hrs on weekdays. He had restricted commissary, was taken to a shower to shower in front of staff in handcuffs 3 times a week. He was denied basic toiletries like a comb, but allowed a razor. If a person is placed in administrative detention for fighting or for doing drugs, they are placed in "F" pod with the exact same restrictions. the only difference is a magnet that says "A/D" for Administrative Detention on their door instead of "psych lock". During this time of 65 days in "F" pod, defendant only saw a psychologist for ~1 minute

once a week to be asked: "Do you want to harm yourself or others? Do you want

medication?" He was otherwise ignored.

After 65 days Dr. Turner sat down with defendant for a short time to ask

basic questions of procedure, such as: "What are the different types of pleas?" When

defendant answered "Guilty, not Guilty, and Nolo Contendre," Dr. Turner said, "and...?"

because she was under the false impression that "not guilty by reason of insanity" was a

plea. Defendant had to explain that you plea "not guilty" then file a motion to inform the

Court that you intend to offer the "Defense of Insanity" as a challenge to the mens rea

element claiming you were incapable, due to mental illness, of forming "intent". Despite

defendant being in low security for 18 months, and being confined with a Jewish lawyer roomate who

told defendant he should pursue a law degree as he was more knowledgable than

himself about the law, Dr. Turner held this meeting to get defendant to agree not

to attack Jewish People because of their religion. Defendant was then moved to

"C" pod. A "less restrictive" solitary confinement.

In "C" pod, all the same restrictions applied as "F" pod, except that every other day defendant was locked down for 21 hrs. instead of 23 hrs, defendant could walk to the showers without hand cuffs 3 days a week, and defendant could see a T.V. if he stood at his cell door. Defendant was still only able to see a psychologist for ~1 minute a week to ask the same two questions. Defendant was in "C" pod for 40 days.

After 105 days defendant was moved to General Population, and told that he cannot be restored to competency without medication, that the facility was moving to force medicate defendant to restore him to competency. It is commonly known at this facility that under no circumstance will they say you are restored unless you are on medication. If you refuse, they ignore you until your time expires, then request you to be force-medicated. Dr. Rice informed defendant he should take medication because he will "choose to stop fighting his case". There are several cases for "Sell's hearings" involving staff from M.C.F.P. Springfield claiming

that "most people who are force medicated accept a plea after being restored to

competency." It appears that if "diesal therapy" doesn't force a plea, the government

will medicate one out of you while claiming your submission is evidence it works.

When defendant was moved to General Population "B" pod, he met a detainee

attempting to plea "not guilty for reason of insanity" who committed armed robbery of

a casino, got into a shootout with police, and was shot by them. This individual was

in "F" pod for 7 days, and "C" pod for 30. Another individual was found "not guilty

due to reason of insanity" admitting to the murder of two people, he skipped "F"

pod entirely, spent ~7 days in "C" pod, and was moved to open. These two clearly

more violent charges were in solitary confinement for "observation" for far less time

than defendant because they were taking "voluntary medication", therefore the purposeful

torture of solitary confinement of almost 4 months wasn't necessary. Defendant is

charged with misusing words in or affecting commerce, not shooting at police during

an armed robbery or murder. But solitary confinement was "necessary" for far longer

than a person who murdered two people and another who used deadly force against police after using deadly force to steal money. There is no rational explanation for this discrepancy other than defendant was purposefully and maliciously tortured with solitary confinement, without cause, as a pretrial defendant presumed innocent, purely to coerce defendant to take voluntary medication. Since it did not work, the new strategy of claiming he cannot be restored unless the Court orders forced medication has been adopted. A psychological report to rationalize this strategy will now be fabricated, and made to look convincing using argument to credentials logical fallacy. Hopefully ignoring entirely that locking someone in solitary confinement for 105 days is considered torture, it is also not evaluating a person's "present ability" to understand the proceedings or to assist in thier defense. There being no need for the government to do that, as they manufactured evidence of incompetence by sending defendant to a psychologist to diagnose him with "delusional disorder" off of Twitter posts.

At this time, defendant has been incarcerated without a trial for ~30 months,

been in 13 facilities in 5 states, served a total of 119 days in solitary confinement (defendant was placed in Solitary Confinement in Oklahoma for 14 days. The BOP staff said it was because "you must be a conservative"), has had his legal work "lost" twice, all under the guise of a statute which allows for one 30 day delay (with a 15 day extension not used here) and one 120 day delay (with an extension not used here). If defendant was allowed a trial, his max recommended sentence would be 0-6 months. The public defender assigned in Texas for the extradition hearing told Defendant "the most you'll get is probation."

Defendant arrived, finally, at M.C.F.P. Springfield on November 18, 2024, 1 year and 19 months after arrest, the statutory maximum length of time for commitment ended on March 18, 2025. The Court did not extend the commitment order, nor did the Court dismiss the case. As such, the Court no longer has jurisdiction under 18 U.S.C. §4241 as of March 18, 2025. Defendant remained in custody of the Attorney General outside of the Statute until April 22, 2025 after

explaining to the Warden that a reasonable period of time not to exceed 120 days

does not mean "Keep everyone for 120 days, then also until whenever we get around

to a report," and that if the Court had not dismissed the case nor extended the

period of commitment that defendant was entitled to argue his due process

rights were violated in a habeas corpus petition defendant served the Warden and

US Attorney General, defendant was promptly told to pack up, that he was

being released from custody of the Attorney General.

At the time of writing this motion, defendant has been incarcerated for 109 days

after custody of the attorney general under 18 USC §4241 had expired. As

the term of the statute expired defendant argues this period of detention is

unrelated to competency determination, and that on March 19, 2025 the speedy

trial clock started again. Additionally, the time period that defendant was

held in excess of the time "not to exceed 30 days" when defendant was sent

to Seatac for evaluation "to establish 'a reasonable belief'" of incompetence

should be retolled as well to count against the speedy trial clock as it cannot

be said that blatant disregard for a time period "not to exceed 30 days"

exceeding the 30 day period is related to competency procedure. The 6 months

defendant waited for a bed as a result of the Attorney General consistently

violating the explicit time frame set by Congress for every pretrial detainee

under ● 18 U.S.C. 3424l cannot be considered a "reasonable delay", and should

count against the government in terms of the speedy trial clock. It cannot be

said to be a "reasonable delay" for the time period between Sept. 25, 2023 and

May 10th, 2024 for the Court to issue an order for an evaluation ordered as the

result of a hearing on June 6th, 2023. This time should count against the

government as well. Based on these issues, the Speedy trial clock should be

retolled, and the case dismissed for violating defendant's speedy trial rights.

   Defendant being incarcerated for ~30 months when his max recommended

sentence would be 0-6 months clearly constitutes punishment absent due process

as defendant has served 5 times his sentence without a finding of guilt. Of that

~30 months, defendant was unlawfully placed in solitary confinement for 4

months absent notice or chance to defend nor periodic review as required for

administrative detention of "innocent until proven guilty" pretrial detainees. This

is treatment for the most vident of offenders, and only after a finding of guilt.

It was used as a tactic to torture defendant into choosing to take "voluntary

medication", presumably to medicate defendant into "choosing" to plead guilty.

Defendant has been moved from facility to facility, being forced to re-buy

necessities over and over while the government uses transportation as a method

to separate defendant from his legal paperwork, solely to interfere with his

ability to fight his case. This well known, purposefully malicious tactic used

to elicit a plea of guilty to just be free of this mistreatment clearly

constitutes a punishment absent due process. As such, the case against

defendant should be dismissed.

As the Court did not issue an extension under 18 U.S.C. § 4241 (d)(2) nor did it dismiss the charges against defendant, and jurisdiction to dismiss under 18 USC. § 4241 has expired it must be presumed that through silence the Court has acknowledged defendant is competent to proceed to trial, otherwise it would have taken one of the two actions allowed by 18 U.S.C. § 4241 during the explicit time frame given by Congress. As such, the motion to dismiss and proceed with 18 USC. § 4246 by the AUSA is beyond the subject matter jurisdiction of the Court to grant. 18 U.S.C. § 4241 committment is a prerequisite for an 18 USC. § 4246 hearing. An evaluation under 18 U.S.C. § 4247(b) for 45 days for an 18 U.S.C. § 4246 hearing can only be ordered by the Court in the District where defendant is hospitalized pursuant to 18 U.S.C. § 4241 (d) committment. There is no authority in any statute for the District Court to send defendant to another facility to perform an 18 U.S.C. § 4246 committment evaluation. A proper reading of the statute makes the procedure under 18

U.S.C. § 4241 and § 4246 as follows:

1) Defendant, the AUSA, or the Court raises the issue of competency hearing

2) If it is reasonable to believe defendant is incompetent from already existing evidence, the Court can elect to have defendant evaluated for 30 days

   b) the Director of the facility can request an additional 15 days for the evaluation the Court can choose to grant

3) The Court holds a hearing on competency of defendant, if incompetent defendant is committed to the Attorney General for "a reasonable time" which may vary per defendant, but cannot exceed 130 days. During this time, one of 3 outcomes must happen

   a) Director of facility certifies defendant competent

   b) Court dismisses charges

   c) Court extends for additional reasonable time

If none of these happen, the US Attorney General loses custody, jurisdiction under 18 U.S.C. § 4241 lapses. Defendant is presumed competent. Court may repeat the procedure from step 1.

If Court extends for additional reasonable time because facility claims defendant can be restored, then defendant remains in custody of attorney general. Repeat Step 3, minus a hearing.

If Court dismisses case, the director of the facility can elect to release defendant or move to have defendant placed in a State facility if the director feels they are a danger to the public. If no state facility exists, director files a certificate with the Court in it's jurisdiction

to hold an 18 U.S.C. § 4246 hearing

IF court in the District where defendant is hospitalized elects to do so, it can have defendant evaluated for a period not to exceed 45 days prior to the hearing.

No law allows Mr. Goldsmith to dismiss the case for lack of competency after the 120 days has lapsed, and then send defendant to be evaluated under 18 U.S.C. § 4246. No law allows the U.S. Attorney to request an 18 U.S.C. § 4246 evaluation.

There is simply no jurisdiction whatsoever for these actions. I find it amusing the supposedly incompetent person has to explain this statute to the AUSA. If only a law existed to have the AUSA evaluated... Requesting an evaluation to manufacture evidence to support a competency hearing, then requesting to dismiss the case and send defendant for an 18 U.S.C. § 4246 hearing when no jurisdiction exists, seems like reasonable cause to suspect you don't understand the proceedings. Don't worry, the guy you claim is incompetent, and has no law degree will explain it to you. You knew what you are doing in my case is wrong, you deserved that. Sold your soul for a promotion.

This motion cannot be dismissed under 28 U.S.C. §1654 as 28 U.S.C. §1654 only allows counsel to argue in the case if the rules of the Court permit. As pointed out to the Court E.D. Mich. L.R. 83.20(f) precludes Mr. Nogues from being assigned counsel. He is not a member of the State Bar of Michigan, no member of the State bar of Michigan with an office in the District appears on record, and no waiver was granted at the start of the case. As such, only defendant can argue in this case, and as 18 U.S.C §4247 requires counsel for a competency hearing, defendant was declared incompetent by the court without due process. As such, all time "suspended" from speedy trial rights must be counted against the government, and the case dismissed for violation of due process. As Mr. Nogues acknowledges in 6th Circuit Case 23-1661, this argument is "Clever" and "Novel". The Court has denied defendant the 6th Amendment right to Counsel and the right to proceed pro se, while simultaneously trying to have him declared incompetent.

Lastly, the Court never had jurisdiction in the first place. Defendant placed an

entry in a database Server in Texas, from Texas. The FBI office in Michigan sending

a query to the database server from Michigan does not grant territorial jurisdiction

for a purely intrastate act having no interaction with commerce at all. Defendant

accessed a free, non-commercial wireless access point in Texas to access a Server

in Texas, and placed an entry into a database. There was no action in or affecting

commerce nor was it even "interstate". But even if it was, the act occured in

Texas, not the Eastern District of Michigan. The Court in the Eastern District of

Michigan lacks both subject matter and territorial jurisdiction.

Additionally, defendant exercised the right to self-determination as recognized

in the Michigan State Constitution on 11-11-2022, well 10-31-2022, but announced

on 11-11-2022. When the State of Michigan created two classes of people they

termed "vaccinated" and "unvaccinated" to distinguish between people who

refused and people who took an "investigational new drug" licensed under 21

CFR 312, and tried to deny access to the government to those "unvaccinated"

they denied people who refused to take legally defined experimental medication

the right to a Republican Form of Government. This placed them in a State of

Nature without a government to represent them or exchange rights to protect them.

~~Plantiff~~ Defendant created a new government under the Law of Nations

by declaring it into existence as he was left without one. Through internal

acts of this new nation (Jural Society) the Sovereignty of this wandering

nation was divested into the person of defendant. The existence of a new

nation is determined solely by the new nation, otherwise it would not

have the right to Equity, Dignity, Independence, or Property. The internal

acts of a self-declared government are beyond the question of foreign

nations and states. The Sovereign of a Wandering Nation, De facto State,

or a recognized State must be afforded Exterritoriality (Sovereign Immunity)

or they are not Independent.

"[T]he very term 'nation' ... means 'a people distinct from others.' They are "distinct,

independent political communities, retaining their natural rights." (see Worcester v. State, 6 Pet. 515, 8 L. Ed. 483, 31 US 515 (1832)) Even a Wandering Nation is an independent political community, meaning a government, and "every government, in its dealings with others, necessarily partakes, in many respects, of the character of a corporation. It must, of necessity, be treated as a body having perpetual succession." (see King of the two Sicilies v. Wilcox (1 Sim. [N.S.] 301)). A nation is distinct from a state as a state is a nation that has acquired territory as property, the territory is called a "country". "According to International law, a state is [a nation] that has a defined territory and a permanent population, under the control of its own government, and that engages in or has the capacity to engage in, formal relations with other [nations]." (see Doe v. Islamic Salvation Front (Fis), 993 F. Supp. 3 (1998)). A nation must exist before a State, and it must be Independent and have the right to property to obtain territory. Because of this independence, a Soverign of a nation must be immune from suit whether the nation is a wandering nation, a de facto state or a fully

request non-immigrant visas for citizens of the new state to enter into U.S. territory was

negotiated, including a method for the "in person interview" with the absence of an

American Consulate. This constitutes implicit recognition, and is permanent, and

irrevocable. It is binding on this Court. However, regardless of whether the court

finds that the facts support that defendant is a Wandering Nation, a de facto state,

or a recognized state, the common law and law of Nations require the Court to

recognize that defendant is a Sovereign Monarch of a foreign Nation, and immune

from jurisdiction of the Court.

To bolster a previous argument in this motion, the following cases should be consulted.

Religious and Political Beliefs nor arguments lacking legal merit equate to incompetence.
(State v. Knecht, 568 N.W. 2d 37, 209 Wis.2d. 600 (Wis App 1997)). Unusual Political
Beliefs do not imply mental instability or concrete intellect so deficient as to render
a trial impossible (US v James, 328 F.3d, 955 (7th Cir 2003)). Merely believing
Fringe views does not mean someone cannot cooperate with his lawyer or understand
the proceedings (US v. Gooch, 595 Fed Appx. 524, 527 (6th Cir 2014)) Meritless
legal arguments do not evidence confusion of legal proceedings (US v Brown, 669
F.3d 10, 18 (1st Cir 2012)) Voluminous Filings of nonsensical pleadings do not create
serious doubt of competency (US v Neal, 776 F.3d 645, 656-57 (9th Cir 2015)).

Defendant is a knowing participant in his defense supported by the fact that he took notes, conversed with counsel, and reacted reasonably to the admission of evidence (U.S. v. Savie, 122 F.3d 122, 128 (2nd Cir 1997))

For the reasons stated, the case should be dismissed with prejudice.

- INRI

Livingston County Jail
Jack Carpenter 451735110
150 S. Highlander Way
Howell, MI
48843

Clerk of the Court of
Mark A. Goldsmith
231 W. Lafayette Blvd. 5th Fl.
Detroit, MI 48226

JUL 11 2025
CLERK'S OFFICE
DETROIT